UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ROBERT HARPER, JR., MICHAEL
BRANDON JAMES, TED MORRISTON,
JAMES TREADWAY,
CLIFTON SCOTT,

        Plaintiffs,

v.                                    Civil Action No. 2:10-0894

MASSEY COAL SERVICES, INC.,

        Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>


        Pending is plaintiffs' motion to remand, filed July 15, 2010.


I.  Background


        Plaintiffs were employed by defendant Massey Coal Services, Inc. ("Massey Coal") until they were terminated in 2009.  (<u>Compl.</u> ¶¶ 17-21).  During the period of plaintiffs' employment, Massey Coal allegedly required plaintiffs to (1) "report to work to attend meetings without payment;" (2) "conduct pre-trip inspections off the clock and without payment;" (3) "conduct post-trip inspections off the clock and without payment;" and (4) "travel to and from the start of work to the

site of equipment without payment."   (Id. ¶ 22).

Plaintiffs instituted this action in the Circuit Court of Boone County West Virginia on June 9, 2010.  Based on the foregoing allegations, plaintiffs claim that Massey Coal failed to compensate plaintiffs in violation of West Virginia Code § 21-5C-1, et seq., titled "Minimum Wage and Maximum Hours Standards" ("West Virginia Act").   (See id. ¶ 12-14, 22).[1]  Plaintiffs brought this action based on the "individual claims of the named plaintiffs and pursuant to West Virginia Rule[] of Civil Procedure 23 as a class action on behalf of named plaintiffs and on behalf of all employees who were not paid wages or benefits due and owing to them."  (Id. ¶ 4).  The complaint further states:

> The [plaintiffs'] claims do not arise out of federal law. The plaintiffs and the class they seek to represent . . . seek no relief under any federal laws or regulations, assert no federal claims, and withdraw any asserted state claim that is preempted by federal law.  The claims herein are brought solely under state common and state statutory law.  Any and all claims or possible claims under any federal law, code, regulation, rule, and/or

---

[1]      Throughout their complaint, plaintiffs imply that West Virginia Code § 21-5C-1, et seq. is part of the West Virginia Wage Payment and Collection Act, W. Va. Code § 21-5-1, et seq. These two Acts, however, are distinct Articles in the West Virginia Code.  Inasmuch as plaintiffs' allegations only concern violations of the minimum wage and overtime provisions of West Virginia Code 21-5C-1, et seq., (see Compl. 12-14, 22), the court will look to that Act in discussing plaintiffs' claims.

otherwise   are   expressly   not   brought   herein   and
disclaimed.

(Id. ¶ 3).

Massey Coal removed on July 12, 2010, based on federal question jurisdiction under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.  On July 15, 2010, plaintiffs moved to remand.  They assert that "Plaintiffs' Complaint is clear -- Plaintiffs did not plead any federal cause of action. In fact, Plaintiffs specifically withdrew and/or disclaimed any federal cause of action whatsoever against Massey Coal."  (Mem. Supp. Mot. to Rem. 3).  Massey Coal contends that federal question jurisdiction exists inasmuch as "the plaintiffs must prove that the defendant falls under the [West Virginia Act's] definition of 'employer,'" which provides in pertinent part that

> The term "employer" shall not include any individual,
> partnership, association, corporation, person or group of
> persons or similar unit if eighty percent of the persons
> employed by him are subject to any federal act relating
> to minimum wage, maximum hours and overtime compensation.

(Opp. Mot. to Rem. 3); W. Va. Code § 21-5C-1(e).  Massey Coal, noting that it is an FLSA eighty-percenter[2] as defined by the Act, maintains "the plaintiff's right to relief depends on a

---

[2]   For ease of reference, the court will use the term "FLSA eighty-percenter" to refer to those employers whose workforce consists of eighty percent FLSA-covered employees (i.e., those employers excluded by W. Va. Code § 21-5C-1).

substantial question of federal law: whether the Defendant is subject to the FLSA."  (Opp. Mot. to Rem. 4).

## II.  Analysis

### A.  Governing Standard

Title 28 U.S.C. § 1441(a) governs federal removal jurisdiction.  The statute provides pertinently as follows:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the . . . defendants . . . . to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).  One source of original jurisdiction is 28 U.S.C. § 1331, which provides "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Id. Accordingly, "removal is appropriate if the face of the complaint raises a federal question."  Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005).

The burden of establishing subject matter jurisdiction falls upon the removing party.  Mulcahey v. Columbia Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994).  Further, our court

of appeals has observed time and again that it is obliged to

exercise caution in the removal setting:

> We have noted our obligation "to construe removal
> jurisdiction strictly because of the 'significant
> federalism concerns' implicated" by it. Maryland Stadium
> Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir.
> 2005) (quoting Mulcahey, 29 F.3d at 151). . . .
> Consistent with these principles, we have recognized that
> state law complaints usually must stay in state court
> when they assert what appear to be state law claims. See,
> e.g., Harless v. CSX Hotels, Inc., 389 F.3d 444, 450 (4th
> Cir.2004); King, 337 F.3d at 424; Darcangelo v. Verizon
> Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002);
> Cook v. Georgetown Steel Corp., 770 F.2d 1272, 1274 (4th
> Cir. 1985).

Lontz, 413 F.3d at 440.

As an additional overlay, our court of appeals has

elaborated on the longstanding well-pleaded complaint rule as

follows:

> In determining whether a plaintiff's claim arises under
> federal law, we apply the well-pleaded complaint rule,
> which holds that courts "ordinarily . . . look no further
> than the plaintiff's [properly pleaded] complaint in
> determining whether a lawsuit raises issues of federal
> law capable of creating federal-question jurisdiction
> under 28 U.S.C. § 1331." Custer v. Sweeney, 89 F.3d 1156,
> 1165 (4th Cir. 1996). Thus, in examining the complaint,
> our first step is to "discern whether federal or state
> law creates the cause of action." Mulcahey, 29 F.3d at
> 151; see also Dixon v. Coburg Dairy, Inc., 369 F.3d 811,
> 816 (4th Cir. 2004) ("The vast majority of lawsuits
> 'arise under the law that creates the cause of action.'
> ") (quoting Am. Well Works Co. v. Layne & Bowler Co., 241
> U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916)). If
> federal law creates a plaintiff's claim, then removal is
> proper. Mulcahey, 29 F.3d at 151. The general rule, of
> course, is that a plaintiff is the "master of the claim,"

and he may "avoid federal jurisdiction by exclusive reliance on state law" in drafting his complaint. Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005).

In this case, just as in Pinney, it is undisputed that state law is the alleged basis for plaintiffs' claims.  Id.  However, "this does not end our inquiry."  Id.

B.    Substantial Federal Question Doctrine

The substantial federal question doctrine applies to a "small class of 'cases in which a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded . . . claims." Id. (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808 (1988)); see also Franchise Tax Bd. of California v. Construction Laborers Vacation Trust, 463 U.S. 1, 13 (1983).  "[T]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal

forum offers on federal issues." Grable & Sons Metal Products,

Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 312 (2005).  The

Grable Court established the following test for determining

whether a state law claim implicates a "substantial question of

federal law" that warrants removal: "the question is, [1] does a

state-law claim necessarily raise a stated federal issue, [2]

actually disputed and substantial, [3] which a federal forum may

entertain without disturbing any congressionally approved balance

of federal and state judicial responsibilities."  Id. at 314.

The Court made clear, however, that merely alleging a "federal

issue" does not operate "as a password opening federal courts to

any state action embracing a point of federal law."  Id.  Indeed,

few cases can be "squeezed into the slim category Grable

exemplifies."  Empire Healthchoice Assurance, Inc. v. McVeigh,

547 U.S. 677, 704 (2006).  With these principles in mind, the

court considers each step of the Grable analysis in turn.


      1.   Necessarily Raised Federal Issue


      The court must first determine whether plaintiffs'

"state-law claim[s] necessarily raise a stated federal issue."

Id.  In other words, the court will ask whether "it appears that

some . . . disputed question of federal law is a necessary

element of one of the well-pleaded state claims." Franchise Tax

Bd., 463 U.S. at 13.   Massey Coal asserts that plaintiffs must

prove that Massey Coal is a covered "employer" under the West

Virginia Act, and that this necessarily raises a federal question

under the FLSA.   (Opp. Mot. to Rem. 3-4).

          Plaintiffs allege two separate violations of the West

Virginia Act.   First, plaintiffs allege Massey Coal violated the

"Maximum hours; overtime compensation" section of the Act, § 21-

5C-3(a), which provides in pertinent part that: "no employer

shall employ any of his employees for a workweek longer than

forty hours, unless such employee receives compensation for his

employment in excess of the hours above specified at a rate of

not less than one and one-half times the regular rate at which he

is employed."   (Emphasis added).   Second, plaintiffs allege

Massey Coal violated the "Minimum wages" section of the Act, §

21-5C-2(a)(4), which states in pertinent part that: "every

employer shall pay to each of his or her employees wages at a

rate of not less than the federal minimum hourly wage as

prescribed by 29 U.S.C. § 206(a)(1)."   (Emphasis added).   The

"Definitions" section of the Act, § 21-5C-1, provides the

following definition of "employer" as that term is used in §§ 21-

5C-3(a) and 21-5C-2(a)(4):

8

(e)  "Employer"  includes  .  .  .  any  individual,
partnership, association, public or private corporation
.  .  .  <u>Provided, That the term "employer" shall not
include  any  individual,  partnership,  association,
corporation, person or group of persons or similar unit
if eighty percent of the persons employed by him are
subject to any federal act relating to minimum wage,
maximum hours and overtime compensation.</u>

(Emphasis added).

The West Virginia Supreme Court of Appeals has had no

occasion to address whether a plaintiff alleging violations of §§

21-5C-3(a) and 21-5C-2(a)(4) must prove that the defendant is an

"employer" as defined in § 21-5C-1.  Nor has that court rendered

a decision interpreting a relevant statute which could guide the

court's determination in this case.  Under federal labor and

employment statutes, however, the plaintiff-employee generally

carries the burden of proving that the defendant is a covered

"employer."  <u>See, e.g.</u>, <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500 (2006)

(holding that, under Title VII, defendant's status as a covered

"employer" who employs at least 15 employees is "an element of a

plaintiff's claim for relief"); <u>Faulkner v. Woods Transp., Inc.</u>,

174 Fed. App'x 525, 528 (11th Cir. 2006) (applying <u>Arbaugh</u> and

granting summary judgment where plaintiff failed to prove that

defendant was a Title VII covered "employer"); <u>Padilla v.</u>

<u>Manlapaz</u>, 643 F. Supp. 2d 298, 301 (E.D.N.Y. 2009) (applying

<u>Arbaugh</u> and finding that defendant's status as FLSA covered

"employer" who grossed at least $500,000 in annual sales was an element of plaintiff's claim for minimum wage and overtime violations); Deslie v. LYG Corp., 535 F. Supp. 2d 1266, 1267 (S.D. Fla. 2008) (same).

Although the West Virginia Supreme Court of Appeals is, of course, not bound by federal law when interpreting West Virginia statutes, the court often adopts federal precedent when it is compatible with a state law, particularly on issues of first impression.  See, e.g., Lipscomb v. Tucker Cty. Comm'n, 475 S.E.2d 84, 91 (W. Va. 1996) (applying FLSA precedent to issue of first impression under West Virginia Wage and Payment Collection Act); Woodall v. Int'l Bros. of Elec. Workers, 453 S.E.2d 656, 658 n.6 (W. Va. 1994) (applying Title VII precedent to issue of first impression under West Virginia Human Rights Act).

In light of these federal cases and the plain language of the West Virginia Act, this court determines that a plaintiff alleging violations of §§ 21-5C-3(a) and 21-5C-2(a)(4) must show that the defendant is an "employer" within the meaning of § 21-5C-1.  To prove that a defendant is a covered "employer" under § 21-5C-1, a plaintiff must further show that "eighty percent of the persons employed by" the defendant are not subject to the FLSA.  Accordingly, a question of federal law -- namely, whether

10

the FLSA covers eighty percent of Massey Coal's employees -- is "a necessary element" of plaintiffs' well-pleaded state claims.

In reaching this conclusion, the court recognizes that "[i]f a plaintiff can establish, without the resolution of an issue of federal law, all of the essential elements of his state law claim, then the claim does not necessarily depend on a question of federal law." Pinney, 402 F.3d at 442 (citing Franchise Tax Bd., 463 U.S. at 13); see also Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 817 (4th Cir. 2004) ("[I]f the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of § 1331."). The court also acknowledges that "'a case may not be removed to federal court on the basis of a federal defense' . . . even if the complaint begs the assertion of the defense." Pinney, 402 F.3d at 446 (quoting Franchise Tax Bd., 463 U.S. at 14).

Here, no matter how plaintiffs frame their theories of liability under the West Virginia Act, they must prove that Massey Coal is a covered "employer," and, in turn, that Massey Coal is not an FLSA eighty-percenter. This is not a "federal defense" that Massey may raise -- it is a basic element of a state law claim that appears on the face of plaintiffs'

11

complaint.

        The court notes that some district courts in the Fourth

Circuit have granted motions to remand under seemingly similar

circumstances to those presented here.  In <u>Chandler v. Cheesecake</u>

<u>Factory Restaurants, Inc.</u>, 239 F.R.D. 432, 437 (M.D.N.C. 2006),

the defendant removed an action, on the basis of the FLSA, in

which the plaintiffs only alleged violations of the North

Carolina Wage and Hour Act ("NCWHA").  <u>Id.</u> at 434.  Just as in

this case, the plaintiffs "specifically den[ied] any intention of

bringing a federal claim."  <u>Id.</u> at 438.  Nevertheless, the

defendant asserted that the plaintiffs' claims "arose under" the

FLSA because (1) the NCWHA's minimum wage and overtime provisions

exempted employees covered by the FLSA, and (2) plaintiffs were

covered by the FLSA.  <u>Id.</u> at 436-37.  In rejecting these

arguments, the magistrate judge in <u>Chandler</u> concluded that:

> The fact that Plaintiffs may be exempt from the NCWHA,
> which, in turn, would mean that Plaintiffs would not have
> a claim under the NCWHA, does not also mean that
> Plaintiffs' claims arise under federal law. It merely
> means that Plaintiffs' state law claims may be subject to
> dismissal under the state's laws and that federal law may
> be a defense to Plaintiffs' state law claims.  In other
> words, even if Defendant has a valid defense to
> Plaintiffs' state law claim, which requires reference to
> federal law, this does not mean that Plaintiffs' claims
> "arise under" the Constitution or the laws of the United
> States.

<u>Id.</u>; <u>see</u> <u>also</u> <u>Faye v. High's of Baltimore</u>, 541 F. Supp. 2d 752,

12

755 (D. Md. 2008) (finding no substantial federal question jurisdiction based on Maryland wage and hour law's references to FLSA regulations in defining certain employees exempt from state law; reasoning that "the exemption constitutes an affirmative defense and the jurisdictional inquiry focuses only on the well-pleaded complaint.").

Chandler and Faye thus stand for the proposition that state wage and hour laws that expressly exempt FLSA-covered employees or refer to the FLSA's employee exemptions in defining the statute's own exemptions do not necessarily raise a federal question, inasmuch as these exemptions constitute affirmative defenses.  See Franchise Tax Bd., 463 U.S. at 14 ("a case may not be removed to federal court on the basis of a federal defense."). Notably, the laws at issue in Chandler and Faye contained distinct sections which carved out exceptions to the statute's general requirements.  Based on the language of those statutes, then, it was logical for the courts to conclude that the defendant, not the plaintiff, bore the burden of proving the applicability of those expressly enumerated exemptions.  Here, by contrast, the West Virginia Act has no such exemption section and instead excludes any employer who has eighty percent of its employees covered by the FLSA.  Because a plaintiff suing under a

13

labor and employment statute generally carries the burden of

proving the defendant is a covered "employer" as an element of

his claim, as in Arbaugh, it follows that the plaintiffs here

carry the burden of proving, as an element of their claims, that

less than eighty percent of Massey Coal's work force is covered

by the FLSA.

Having determined that the plaintiffs' well-pleaded

state law claims necessarily raise an issue of federal law, the

court proceeds to the second step of the Grable substantial

federal question analysis.

2.   Actually Disputed and Substantial Federal Issue

The court must next determine whether the federal

question raised by plaintiffs' claims is "actually disputed and

substantial." Grable, 545 U.S. at 314. As the Court noted in

Grable, "federal jurisdiction demands not only a contested

federal issue, but a substantial one, indicating a serious

federal interest in claiming the advantages thought to be

inherent in a federal forum." Id. at 313. Our court of appeals

has observed that "[t]he determination of whether a federal issue

is sufficiently substantial should be informed by a sensitive

judgment about whether the existence of federal judicial power is both appropriate and pragmatic." Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 807 (4th Cir. 1996) (citations omitted). Moreover, when "the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts." Id.

As an initial matter, it is clear that the question of federal law here is "actually disputed" inasmuch as plaintiffs' state law claims will fail unless they prove that less than eighty percent of the employees of Massey Coal are covered by the FLSA. See W. Va. Code § 21-5C-1. With respect to the substantiality of the federal question, the compelling need for uniform interpretation of the FLSA weighs in favor of finding federal jurisdiction in this case. Plaintiffs' claims under the West Virginia Act hinge on whether eighty percent of Massey Coal's employees are covered by the FLSA. Determinations of FLSA coverage can be quite complex, as the Act contains a number of intricate and frequently-litigated employee exemptions. See 29 U.S.C. § 213. Consequently, there is a substantial federal

15

interest in ensuring that the scope of the FLSA's coverage is given uniform interpretation by federal courts.  In this instance, then, "the existence of federal judicial power is both appropriate and pragmatic."  Ormet, 98 F.3d at 807.

> ### 3.    Disturbance of Congressionally Approved Balance of Federal and State Judicial Responsibilities

Under the last step of the Grable analysis, the court must assess whether the substantial federal question is one "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  Grable, 545 U.S. at 314.  "[T]he federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."  Id. at 313-14.  The existence of a federal private right of action is "evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that § 1331 requires."  Id. at 318. Also relevant to this inquiry is whether federal jurisdiction would "move a whole category of litigation to federal court." Bennett v. Southwest Airlines, Co., 484 F.3d 907, 911 (7th Cir. 2007).

Here, it does not appear that federal jurisdiction will disrupt any congressionally approved division of labor between state and federal courts.  Most importantly, the fact that the FLSA includes an express private right of action, see 29 U.S.C. § 213(b), shows that Congress has struck the balance between federal and state judicial responsibilities in such a way as to authorize federal jurisdiction.  Further, the court does not anticipate that exercising jurisdiction over this case would move a whole category of litigation from state to federal court. Since West Virginia's wage and hour law parallels the FLSA, many plaintiffs pursuing claims under the West Virginia Act assert FLSA claims in the same suit.  Consequently, cases such as this one are often removed to federal court.  This case is atypical, however, in that plaintiffs have tried to avoid any FLSA claims and instead seek to proceed only under the West Virginia Act. Given the unusual circumstances of this case, the court finds that exercising federal jurisdiction here "will portend only a microscopic effect on the federal-state division of labor." Grable, 545 U.S. at 314.  The final Grable factor weighs in favor of federal jurisdiction in this case.

17

### III.   Conclusion

Based upon the foregoing, the court concludes that it has subject matter jurisdiction.  It is accordingly ORDERED that plaintiff's motion to remand be, and it hereby is, denied.

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and any unrepresented parties.

DATED: February 2, 2011

_____

John T. Copenhaver, Jr.
United States District Judge

18